UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

IN THE MATTER OF THE SEARCH OF:

11189 WOODBURN ALLEN SPRINGS RD, ALVATON, KY 42122

Case No. EDKY 5:25-MJ-5242-MAS
Filed Under Seal

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, W. Douglas Johnson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 11189 Woodburn Allen Springs Rd, Alvaton, KY 42122 (**PREMISES**) described in Attachment A, for the items and evidence described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since February 2011. My duties, responsibilities, and training as a Special Agent with the FBI include investigating violations of federal law. I have investigated various criminal violations, including illegal drug trafficking and distribution. I have been involved in the execution of search warrants. Through my training, education, and experience, I have become familiar with criminal activity and the criminal justice system. Many of my investigations involve the use of technology, analyzing online and telephonic contacts, and researching suspects' online activity and footprints. I have become

familiar with the day-to-day operations of individuals using cell phones to communicate and coordinate fraudulent and criminal activities, including communicating with co-conspirators during the commission of an offense. I am also familiar with investigating drug trafficking activity with surveillance and the used of confidential informants. Through my training and experience I have become familiar with drug trafficking activity and how drug traffickers use property and residences to facilitate drug trafficking.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

4. The FBI and Warren County Drug Task Force (WCDTF) are investigating **EVANS**, **Robert WATKINS (WATKINS), Michael POLLARD (POLLARD)**, and other identified and unidentified subjects regarding violations of 21 U.S.C. § 841. Based on the investigation thus far, the FBI has confirmed that **EVANS** is engaged in illegal drug trafficking, including but not limited to trafficking crystal methamphetamine. The FBI believes **EVANS** is a large-scale drug trafficker who imports approximately 100 pounds of methamphetamine per month from **POLLARD** in western United States, using **WATKINS** as the courier. **WATKINS** makes monthly trips to California to collect and transport large quantities of methamphetamine.

A. **Background**

5. In January 2025, the FBI and the Barren River Drug Task Force (BRDTF) searched a premises in Glasgow, KY related to a drug trafficking investigation involving a

cooperating defendant (hereafter CD1) and seized approximately 12 pounds of crystal methamphetamine, cash, and other illegal narcotics, all of which was found on CD1's property or property associated with CD1. During the search, I interviewed CD1, who advised that **EVANS** was CD1's source of supply for crystal methamphetamine. CD1 admitted purchasing 30-40 pounds of crystal methamphetamine per month from **EVANS** for approximately three years. This information was consistent with evidence that investigators had gathered and analyzed, including toll analysis and surveillance, which showed communication between CD1's device and devices later determined to be used by **EVANS**.

6. Since January 2025, the investigation has uncovered information about **EVANS'S** drug trafficking activity, including that **EVANS** uses two cellular devices: (1) a legacy overt cell phone that's primarily used to contact friends and family or conduct otherwise legitimate and lawful activities and (2) a second cellular device used to contact drug traffickers and conduct unlawful activities. **EVANS** replaces his second cellular device, or the associated phone number, approximately every month and more frequently as of late. Since November 2024, **EVANS** has used and replaced the following phone numbers 270-784-8838 (Target Cell Phone 1), 270-784-7856 (Target Cell Phone 2), 270-647-0188 (Target Cell Phone 3), 270-202-7502 (Target Cell Phone 4), 270- 784-8938 (Target Cell Phone 5), 270-793-6503 (Target Cell Phone 6), and is now using 270-656-2201 (Target Cell Phone 7).

7. I have investigated **EVANS'S** monthly purchase/resupply of methamphetamine and been able to identify a pattern of behavior through toll analysis, cell phone location data, physical surveillance, pole cameras, GPS trackers, wire intercept, and use of a confidential informant. In preparation for a "re-up," **EVANS** contacts downstream traffickers in order to collect money for the "re-up." He then contacts **POLLARD** in California to initiate the resupply. **EVANS** then contacts and meets **WATKINS** in order to give **WATKINS** the money he collected. **WATKINS** then travels to California to meet **POLLARD** and transact for the narcotics. **WATKINS** returns to Kentucky to deliver the narcotics to **EVANS**, which was observed during the April 2025 "re-up" described below.

8. Based on the investigation, which includes physical surveillance, analysis of cellular phone location data, GPS tracking, and CD1, **EVANS** is actively engaged in large scale drug trafficking and has been for several years. Through the investigation, I have identified two locations where **EVANS** resides or otherwise spends a significant amount of time and likely keeps proceeds or instrumentalities of his drug trafficking endeavors, including the **PREMISES** and 676 Willow Bend Circle, Bowling Green, KY 42104. Based on my training and experience, there is a probable cause to believe **EVANS** keeps instrumentalities and fruits of his crimes at both locations, included the **PREMISES**.

B. **PREMISES**

9. The **PREMISES**, located at 11189 Woodburn Allen Springs Rd, Alvaton, KY 42122, is as a single-family residence structure with a dark colored roof, brick and wood siding, and attached garage. **EVANS** and his spouse, Merritt Evans, are the primary

owners according to open-source databases and the Warren County PVA website on May 9, 2025. However, it is not believed that either **EVANS** or Merritt Evans reside at the **PREMISES**.

10. However, **EVANS** spends a significant amount of time at the **PREMISES** as evidenced from the cellular telephone location data from both **EVANS'S** legacy overt cell phone and the various drug phones he has used. I also know **EVANS** spends time at the property through physical surveillance and a pole camera. It appears **EVANS** is remodeling the inside of the **PREMISES** and therefore does not stay overnight on a consistent basis.

C. **Recent drug trafficking**

11. **WATKINS'S** most recent trip was on or about April 7-11, 2025.[1] **WATKINS** is currently on another trip and arrived in Hesperia, CA on or about May 8, 2025 at 7:41 AM CDT, where he met with **POLLARD** twice. **WATKINS** began driving east on May 11, 2025. Based on training and experience, I believe **WATKINS** provided money to **POLLARD** during this meeting and that **POLLARD** later provided narcotics. I

---

[1] Through pen register/trap-and trace (PR/TT) data from **EVANS**, **WATKINS** and **POLLARD'S** cellular devices as well as physical surveillance, I surveilled what I believe was the April resupply when **EVANS** received controlled substances from **POLLARD** and used **WATKINS** as the courier. The FBI and WCDTF employed physical surveillance and real-time location information for the devices used by **EVANS**, **POLLARD**, and **WATKINS**, as well as GPS trackers to observe the events between April 6, 2025 and April 11, 2025. During this time, **WATKINS** traveled to Bowling Green, Kentucky to collect funds and then drove to California in a semi-truck and trailer. I believe he then collected the narcotics from **POLLARD** in San Bernadino, California and brought them back to **EVANS** in Bowling Green, Kentucky.

also believe that **WATKINS** is travelling back to Kentucky where he will deliver the narcotics to **EVANS**.[2]

12.   On or about April 30, 2025, I obtained an order authorizing the interception of wire communications pursuant to 18 U.S.C. 2518 for a cell phone that is used by **EVANS**. During the interception period, **EVANS** has been in communication with the user of 270-612-1164. Based on open records searches, I believe the user to be Travis Hogan. Hogan has a drug-related criminal history that includes a 2008 charge for possession of cocaine. During an intercepted phone call at or around 2:32 PM CDT on May 7, 2025, **EVANS** called Hogan and Hogan said, "I'm just going to leave it out by the barn." **EVANS** said "no" when Hogan asked whether he should put it in the cooler up on the shelf in the garage at the house. Based on my training and experience, and facts identified in this Affidavit, I believe that Hogan and **EVANS** used the **PREMISES** for drug trafficking activities. I believe Hogan placed money in a cooler, per **EVANS'** direction, at the **PREMISES**. This information corroborates statements from CD1, who also dropped money off at **EVANS'** known addresses inside a cooler, money that was used to purchase illegal narcotics. This investigation has determined that, as of May 8, 2025, **WATKINS** is in the process of obtaining illegal narcotics from **POLLARD**, which he will transport from

---

[2] On May 12, 2025, FBI interdicted WATKINS in Oklahoma and recovered approximately 20 pounds of cocaine, a large quantity of marijuana, and a firearm. WATKINS has confessed to transporting narcotics between "hillbilly," believed to be EVANS, and "San Diego," POLLARD since at least January 2025. He further advised that the interdicted load was a "short load," which is why methamphetamine was not received. The debriefing of WATKINS continues.

California to **EVANS** in Kentucky. Based on my training and experience and knowledge of this investigation, I believe Hogan placed money in a cooler at the **PREMISES** to purchase narcotics that will arrive in Kentucky in the next several days.

13. In addition, video surveillance captured Anthony Thompson, a know drug trafficker and co-conspirator of **EVANS**, and **EVANS** convene at the **PREMISES** before **EVANS** and other co-conspirators met and retrieved narcotics from **WATKINS** during the April 11, 2025 "re-up."

14. I also learned during the period of interception that **EVANS** pays **WATKINS** $20,000 per trip to California. Based on my training and experience, this fee demonstrates that **EVANS** is involved in significant drug trafficking and likely earns significant proceeds from his activities. In addition, based on the information from CD1, physical surveillance, and intercepted wire communications, I know that **EVANS** conducts significant transactions and is often collecting, storing, and transferring drug trafficking proceeds. I know that drug traffickers protect their proceeds by keeping proceeds in protected places, including residences like the **PREMISES**.

15. Because **EVANS** vacated his primary residence at 424 Crossfield Way, Bowling Green, KY, I believe **EVANS** now uses the **PREMISES** to store his personal property and other valuable items, including drug trafficking proceeds.

16. Based on my training and experience, I know illegal drug distributors often use multiple physical locations to hide the evidence of their crimes, including drugs and proceeds. In this instance, **EVANS** conducts large narcotic transactions on a monthly basis

and has so for several years. I believe **EVANS** secures the proceeds and instrumentalities of his drug trafficking in the **PREMISES**, as **EVANS** owns the property and is there often. I know illegal drug distributors travel to and from those areas in order to further their illegal enterprise. I also know from my training and experience that drug traffickers carry multiple cellular phones with them at all times to conduct their illegal business. Based on my training and experience and the facts stated in the preceding paragraphs, I believe evidence of illegal activities being conducted by **EVANS,** including instrumentalities and proceeds, will be found at the **PREMISES** identified in this warrant.

## CONCLUSION

17.  I submit that this affidavit supports probable cause for a warrant to search the **PREMISE**. I further submit this affidavit supports seizure of all the items described in Attachment B, which constitute contraband, instrumentalities, and evidence concerning violations of 21 U.S.C. §§ 841(a)(1) and 846.

## REQUEST FOR SEALING

18.  It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet and disseminate them to

other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

/s/ W. Douglas Johnson
W. Douglas Johnson
Special Agent
FBI

Transmitted via email and attested to by email in accordance with the requirements of Fed. R. Crim. P. 4.1 on this  12  day of   May  , 20 25 .

Matthew A. Stinnett
United States Magistrate Judge